PHILLIPS *et al. v.* AYCOCK.

The motion to reinstate having been made and granted at the same
term of the court at which the action was dismissed, the court
had jurisdiction of the matter; and on the facts in the record,
did not abuse his discretion in reinstating the case.
August 1, 1892.                    *Judgment affirmed.*

Practice.    Reinstatement.    Before Judge MADDOX.
Floyd superior court.    September term, 1891.

The exception is to the reinstatement of the plain-
tiff's case which had been dismissed on demurrer. The
allegations of the petition were: In November, 1886,
plaintiff bought of Trimble, through his agent Camp,
a certain tract of land for $380, to be paid, $50 cash,
$50 December 25, 1886, $140 November 1, 1887, and
$140 November 1, 1888. After the trade was made,
Aycock and Phillips agreed with plaintiff to take in-
terests therein and in the land sold, Aycock to take one
half and Phillips one quarter, leaving to plaintiff one
quarter. In pursuance of this agreement $50 was paid
by Aycock and Phillips, three notes were given to
Trimble for the deferred payments with interest, and a
bond for title was given by Trimble, signed also by

Camp, to convey the land upon payment of the notes. This bond states Aycock and Phillips as the obligees, without mention of the plaintiff. At the time it was made Camp proposed to make it to Aycock, Phillips and plaintiff, but plaintiff replied that he did not care anything about a bond—when he paid his part of the money he would take his deed; whereupon Camp left plaintiff's name out of the bond. The three purchasers went into possession of the land in pursuance of their agreement of purchase, and each exercised all rights pertaining to a common ownership. Plaintiff bought and used lumber for the improvement of the place, built fences thereon, and cut such timber as was necessary and proper for the use of the place and himself as a common tenant. To these and other acts of ownership by him the right was never disputed by Phillips nor any one else, until recently. While the plaintiff was performing these acts, Phillips was often and for a long period of time present about the place, and knew of plaintiff's acts and of his claim of a common ownership. When the first note became due, Aycock and Phillips paid it; when the second matured Aycock paid $70 of it and plaintiff paid the other $70; when the last note became due Aycock paid $70 and interest and plaintiff paid $38.05, which was half of the balance of the principal and interest, and Phillips paid the rest. Phillips has recently claimed and continues to claim that plaintiff has no interest in the land and purchase; he also demanded of Trimble and Camp a deed to himself individually, leaving plaintiff out of the transaction, to which request Camp and Trimble assented and made a deed to Aycock and Phillips, leaving plaintiff without any written title to his property. He has requested of Camp a deed in compliance with the terms of the original agreement, and Camp expressed a willingness to make it, but since refused to do so as he and Trimble

had already made a deed to Phillips. The prayers are, that the deed be cancelled, and that Trimble and Camp be required to execute and deliver a deed conveying a half-interest to Aycock and a quarter-interest each to Phillips and plaintiff; and for process against Trimble, Camp, Aycock and Phillips.

"The defendants" demurred because: No cause of action is set forth. The petition shows that the plaintiff is not entitled to any relief against the defendants, or either of them, and it is not in the power of the court to grant any of the prayers; for the plaintiff having been present when the bond for title was made and declined to allow his name put into it, but stood by and allowed the obligors to execute it as they did, he waived any right or interest he might have had in the purchase of the land and is estopped from setting up the same. The parol contract sought to be set out by the plaintiff contradicts the bond, and he cannot legally set up the agreement he claims to have had as to what his interest was to have been, it being wholly at variance with the written contract made at the time of the purchase; and he wholly fails to show any legal or equitable rights that would authorize the court to set up the parol agreement in contradiction of the written obligation. This demurrer was sustained and the case dismissed on October 3d, 1891. On October 22d, the motion to reinstate was made on the ground that at the time the case was heard none of the defendants were making any defence, either by demurrer, plea or answer, nor was any attorney authorized to represent any of them, except Phillips. The motion alleges that during the argument of the demurrer Halsted Smith, of the attorneys for the plaintiff, stated in open court and in the presence of G. A. H. Harris, Esq., who argued in favor of the demurrer, that no one of the defendants except Phillips was making any defence to the suit, which

statement Harris heard and did not dispute or deny. The plaintiff presented to the judge his bill of exceptions to the sustaining of the demurrer, in which it is recited that no one of the defendants, except Phillips, made any defence by demurrer, plea or answer. The judge directed the bill to be handed to G. A. H. Harris for examination, who now claims that without authority and voluntarily he represented Trimble, but the only notice he pretends to have given of that fact was by using in his demurrer the plural "defendants." Plaintiff's counsel knew this statement, which by its terms included all the defendants, was incorrect, as Camp, one of the defendants, was in court as a witness for the plaintiff and had stated to plaintiff's counsel that G. A. H. Harris had been to him and solicited employment in the case, which had been refused. Plaintiff's counsel had understood all the time that no one was defending except Phillips, and so stated in open court and met with no denial. While they did not notice the use of the plural word as applied to the persons defending, yet they relied upon the fact as it existed and as they were authorized to do under the circumstances. Since the bill of exceptions was handed to Harris, he kept it before offering to return to the court, long enough to go to Trimble and solicit employment, and he now claims to represent Trimble by authority. The demurrer was heard and argued upon a mistake of fact which does great injustice to the plaintiff; wherefore he prays that the case be reinstated so that the new features being developed by the action of Harris, may be met in a legal manner.

Phillips demurred to this motion on the ground that it set forth no sufficient legal cause for reinstating the case. The court overruled the demurrer, and Phillips excepted. The assignments of error upon the order of reinstatement are, that the court erred in entertaining

the motion for the reason that some of the defendants were represented by counsel without authority. It is insisted that a plaintiff cannot complain of the unauthorized representation of a defendant, but the party improperly represented can alone complain, and that no party can complain unless he alleges error in the judgment. Further, that it was error to reinstate the case on the facts as they appeared in evidence; that Phillips being the real party, and the codefendants being only nominal parties and his privies in estate, he had the right to have them represented; that the demurrer itself was for all the defendants, and the ignorance of only one of the plaintiff's many counsel would be no excuse or valid reason for setting aside the judgment on the demurrer; that that judgment was correct and the only proper judgment under the law and facts, and the motion to reinstate makes no attack on it, and that one of the defendants alleged to have been represented without his authority knew he was being represented, was present at the trial and made no objection; and the other, after being fully advised, made a written ratification of all that had been done for him.

The facts as they appeared in evidence were, in brief, as follows: When Halsted Smith handed the judge the bill of exceptions the judge directed him to hand it to G. A. H. Harris for examination, which was done. On October 23d, Judge Maddox declined to sign it with the statement that no one was defending except Phillips, whereupon Smith presented the motion to reinstate. George Harris stated that he claimed to represent Phillips and Trimble, but did not represent the other defendants, and presented a ratification of his representation of Trimble. He had previously stated to Smith that he had the ratification. When it was presented Smith asked time to make a counter-showing, which the court granted. He obtained from Camp a

letter to Trimble, explaining the circumstances and asking him to revoke his ratification. Smith went to Trimble's house and handed him Camp's letter, and Trimble remarked that he thought perhaps he had made a mistake in not referring Harris to Camp, and that Smith could write a revocation. Smith did so, and Trimble signed it. On this occasion Smith told Trimble that Walter Harris was a quiet, gentlemanly fellow, but " we " made a good deal of fun of George, as he was regarded a sort guardian *ad litem* for everybody. On the argument of the demurrer Smith made the statement set forth in the petition, which was not denied, and would have proved that Trimble was making no defence if he had had any idea that any one was pretending to represent him. The ratification of the appearance of George and Walter Harris for Trimble was dated October 13th, and it also authorized them to continue to represent him in the case. The revocation was dated October 24th, and by it he revoked his ratification of the appearance of George and Walter Harris and their authority to appear for him in the future. This paper also authorized Camp (who is Trimble's son-in-law) to file such answer or take such action for Trimble in the case as he may see fit, and to select such attorneys as he sees proper. The Harrises were notified by plaintiff's counsel of the revocation after securing it. When the bill of exceptions was tendered to the judge and was handed by his direction to George Harris, the latter read it and immediately handed it back to the judge, who was on the bench, and called his attention to the demurrer. The judge then instructed him to take the bill of exceptions and see the plaintiff's attorneys and get them so to change it as to conform to the demurrer, which he did, but the plaintiff declined to make any change in the bill of exceptions. Harris immediately returned it to the judge

with the information that the plaintiff had so declined, and then informed the court exactly how and to what extent the Harrises appeared for all the defendants. As he handed the bill of exceptions back to the judge, the judge told him to keep it. Harris replied that he would hand it to the clerk, and the judge replied, " No, you just keep it." The Harrises were employed and paid by Phillips to represent and defend him and his title to the land in dispute in any litigation with the plaintiff. When the case was begun Phillips directed George Harris to demur for all the other defendants; Phillips was the only defendant whose interest could be affected by the suit, and the other defendants might pay no attention to it. Camp was present in court when the demurrer was argued, and made no objection to anything George Harris said or did in the case. After the demurrer was filed George Harris asked Camp if he wanted to file an answer, stating that they had filed a demurrer which he thought would finally dispose of the case. Camp replied he did not care to answer as he had no interest in the case, and that Messrs. Dean & Smith had guaranteed it should cost him nothing. Harris then told Camp it was his duty to defend the case; otherwise he would be liable to Phillips for breach of warranty. Harris thought that by reason of his employment by Phillips he had the right to appear for Camp and Trimble, who were merely nominal parties and warrantors of Phillips' title. They had authority from Aycock to represent him, and did appear for all the defendants in presenting and arguing the demurrer, believing they had authority to do so. The acknowledgment of service on the demurrer was signed by L. A. Dean, of the firm of Dean & Smith, plaintiff's attorneys, and Dean read the demurrer at the time of the acknowledgment. Previously to the commencement of this suit Aycock and Phillips had brought suit against

Camp and Trimble, praying for specific performance of their contract to convey the land according to the bond for title. The defendants agreed afterwards to make the deed according to the bond, and the case was agreed to be settled, and an entry to that effect was made by the judge on the bench-docket, August 1, 1890. Walter Harris had occasion to go to see Trimble to procure his signature to a deed to other property, and took along the bill of exceptions above referred to, and explained to him all the facts and the position of Trimble, and he then signed the ratification of the appearance of the Harrises for him. Camp testified that plaintiff paid one fourth of the purchase money for the land and did all the trading with him about it; Camp did not know Phillips in the matter until they came to get the bond.

G. & W. Harris and Dabney & Fouché, for plaintiffs in error.

Dean & Smith, Ewing & Crosby and H. M. Wright, contra.