### FIELD *v.* BRANTLEY *et al.*

1. An executor has twelve months exemption from suit by the legatees under the will, for a settlement of his accounts. Where a will is offered for probate in solemn form, and, after caveat, a judgment is rendered setting up the will, and the case goes to the Supreme Court, where the judgment of the trial court is affirmed, an equitable action

against the executors for a final accounting, instituted by a legatee before the expiration of twelve months from the time the judgment of the Supreme Court is made the judgment of the trial court, is premature.

2. An equitable petition which seeks to join in one action several different and distinct claims which have no common nexus is subject to demurrer on the ground of multifariousness.

3. Where a judgment is formally entered sustaining a demurrer to a petition, and it contains no provision allowing time in which to amend, it is improper to grant time, by parol, in which to amend to meet the grounds of demurrer urged against the petition. But if the petition in this case should be treated as amended in the manner insisted upon, it was still multifarious.

4, 5. There was no error in striking, on demurrer, certain immaterial allegations in the petition.

SEPTEMBER 15, 1915.

Equitable petition. Before Judge Patterson. Cobb superior court. June 19, 1914.

The assignments of error are based on rulings on questions raised by demurrer to the petition in an equitable action. The following appears from the allegations of the petition: George H. Camp died on August 26, 1907, leaving a large estate which was disposed of by will. Richard H. Field and John T. Brantley were nominated executors. Among the legatees were the widow, Jane M. Camp, one son, Walter A. Camp, and three daughters, Annie C. Field, Hattie C. Brantley, and Sarah A. Camp, all of whom had attained their majority. Special legacies were left to the son and each of the daughters, but the greater part of the estate was left unconditionally to the widow, who had also a separate estate. Certain questions arose, owing to dissatisfaction upon the part of some of the children as to the disposition of the testator's property, which were likely to provoke a contest over the probate of the will. In an effort to satisfy all, a parol agreement was entered into between the widow and children, whereby the widow was to execute a deed by which she should secure to herself all the property bequeathed to her by the terms of the will, and also her other separate estate, during her natural life, and at her death to be equally divided among the children. She stood ready to execute such deed for some time, but it was never prepared or executed. In addition to this parol agreement, the four children entered into another among themselves, which was reduced to writing and signed by them, as follows: "We, the children of Mrs. Jane M. Camp, promise to use no in-

fluence with her to make a will or deed or dispose of in any way property during the next three years. Any papers made in that time will not be recognized by us, and shall be null and void; and on the expiration of three years, if any papers are drawn, it must be with the knowledge and consent of her four children, or the same will be null and void. October 1st, 1907." After these agreements were made the will was probated without further question, and money was paid out to the various devisees in accordance with its terms, though the estate was not finally wound up. On June 11, 1911, Jane M. Camp died, having in the meantime executed a will. John T. Brantley and Sarah A. Camp were nominated executors. The will was admitted to probate in common form on July 4, 1911; and on August 10, 1911, application was made for probate in solemn form. A caveat was filed by Annie C. Field. The case was tried, and, after judgment setting up the will, carried by writ of error to the Supreme Court, where the judgment of the trial court was affirmed. 139 *Ga.* 437 (77 S. E. 559). Thereafter, on December 1, 1913, Annie C. Field instituted the present action against the executors of the will of George H. Camp, the executors of the will of Jane M. Camp, her brother, Walter A. Camp, and her two sisters, Hattie C. Brantley and Sarah A. Camp. The petition sought relief against each set of executors in their representative capacities under the two wills, and against the individuals under the above-mentioned agreements. The character of the relief sought against the several defendants is stated in the opinion, infra. Each of the defendants, except Richard H. Field, executor, demurred on the general grounds, and on special grounds among which were the following: (*a*) In so far as relief was sought against the estate of Jane M. Camp, the action was premature. (*b*) There was a misjoinder of parties, and the action was multifarious. (*c*) Certain allegations in the first and sixth paragraphs of the petition were irrelevant. These grounds of demurrer were sustained, but all of the other grounds were overruled. The plaintiff excepted. The other material facts appear in the opinion.

*R. H. Field, C. E. Small,* and *Neel & Neel,* for plaintiff.

*D. W. Blair* and *George F. Gober,* for defendants.

ATKINSON, J. 1. The first question involved was whether the action was prematurely brought, so far as it sought a recovery

from Mrs. Jane M. Camp's estate, for the reason that the petition showed that a year had not expired before bringing suit since the probating of her will. The petition, though not clear, seems to seek, not only to enforce two agreements, but also to have a winding up of the estate of Mrs. Jane M. Camp by her executors. As to the effort to enforce a contract alleged to have been made by her, her executors were proper parties. But in so far as it may have been sought to wind up the estate of Mrs. Jane M. Camp, the executors had a year after the grant of letters testamentary before being compelled to wind up the estate under the will. Civil Code, § 4073. This year of exemption applies as well whether the proceeding for a settlement of the accounts of the executors is instituted in the court of ordinary or by equitable action. The rule that an executor has twelve months exemption from suit on debts of his testator does not apply, because this is not a suit based upon debts contracted by the testator. The will of Jane M. Camp was probated in common form July 4, 1911. The proceeding to have it probated in solemn form was filed on August 10, 1911. It was contested by the present plaintiff, and the litigation continued until the year 1913, the decision in this court having been rendered on February 12th of that year. In December of the same year the present petition was filed. Pending this litigation the executors could not have wound up the estate and distributed it. Civil Code, § 3883. While it was pending the time above mentioned would not run against them in favor of the legatees and devisees. So that immediately upon having it determined that there was in fact a will, and that they were the executors under it, they could not be called to account to persons claiming under the will. Such is not the intention of the statute; and in so far as this petition sought to require an accounting or distribution by the executors of Mrs. Jane M. Camp, under her will, of her estate, the action was prematurely brought. In so far as it may have been prosecuted upon the theory that the property was not to be administered as her estate, but was to be claimed adversely thereto, a different ruling might apply. *Lanfair* v. *Thompson,* 112 *Ga.* 487 (37 S. E. 717).

2. The petition prayed that the respective rights of the plaintiff and of the other three children of Mrs. Jane M. Camp in "said undistributed money and properties in question be fully deter-

mined, adjudged, decreed, and enforced." In the previous allegations reference had been made to the estates both of George H. Camp and of Jane M. Camp. It was further prayed, that the powers of sale and administration conferred on the executors of Jane M. Camp by her will be decreed to be null and void, and that the duties of such executors be fully determined, defined, and enforced by the decree as to all of the remaining properties in their hands; that two alleged agreements, one between Mrs. Camp and her children, and one by the children among themselves, and all the equities and trusts arising therefrom in favor of the plaintiff, be established and enforced against the children of Mrs. Camp other than the plaintiff, against the executors of Mrs. Camp as to all of the remainder of the estate devised and bequeathed to her in the probated will of her husband, and as to all of the undivided and undistributed property of Mrs. Camp; that any sale or distribution of such remaining property by the executors of Mrs. Camp under powers contained in her will be enjoined; that partition be made between the four children of Mrs. Jane M. Camp and George H. Camp "of all the remaining undistributed properties of their said deceased parents in the hands of" two of the defendants "under color of their executorship of said will of the said Jane M. Camp;" that her executors be required to make a full and final settlement and distribution of all of the undistributed funds and property of the George H. Camp estate, and of all other property of Jane M. Camp remaining in their hands, and "that they be charged in said settlement with compound interest on all funds received by them to date of distribution;" that no part of the costs and expense paid and incurred by the executors of Jane M. Camp to attorneys employed by them in services connected with the previous litigation be charged and deducted from the share of plaintiff "in said estate," and that all of said expense be charged against the executors or against the shares of the children of Jane M. Camp, other than petitioner; and for general relief and process. The petition named as defendants the executors of Jane M. Camp, the executors of George H. Camp, and the three children of George H. and Jane M. Camp, other than the plaintiff.

The foregoing recital is sufficient to show that there was a misjoinder of parties and causes of action. It would seem that there were three main purposes: first, to enforce said agreements, one of

which was made by Mrs. Camp and her four children (which is rather loosely and vaguely alleged), and the other of which was made by the four children among themselves, to the effect that they would use no influence with her to make a will or deed during three years, and that any paper made in that time would not be recognized by them, but should be null and void, and that on the expiration of three years, if any papers were drawn, it should be with the knowledge and consent of all of the four children, or such paper would be null and void; second, to have a settlement with the executors of George H. Camp, deceased;·and third, to have a settlement of certain remaining properties with the executors of Mrs. Camp, as a part of which they were to be charged with compound interest. There were other prayers for relief. The mere statement of the distinct and separate purposes of the petition and parties to it shows that it was demurrable on the ground of multifariousness and misjoinder of parties and causes of action. In enforcing a cause of action equity will give full relief, and may make such decrees and proceed against such parties as are necessary for that purpose; but it will not commingle several different and distinct claims in the same action, without a sufficient common nexus binding them together.

3. In the bill of exceptions it was recited, that at the time of signing the orders and judgments the court granted the plaintiff leave, until the following day, to amend her petition by striking therefrom the names of the executors of George H. Camp, deceased, as defendants; that on the following day, and before the order and judgment which had been taken were entered of record, the plaintiff, by leave of the court did so amend her petition and declined to further amend it, and elected to stand upon it, as thus amended, as against the other defendants; that after allowing the amendment, and notwithstanding it, the court refused to revoke or modify the order and judgment which had been entered and allowed, and directed it to be entered of record. It is not sound practice in this State to sign a formal judgment sustaining a demurrer, and orally to allow time for an amendment thereafter. There was no allowance of time in the order which was signed. It did not appear that on the next day counsel for the adverse party were present or were notified, or had any opportunity to be heard as to the effect of this amendment, or as to whether there should be any modifi-

cation of the order on account of it. It would be an unusual practice to sign an order sustaining a demurrer, thus finally ruling upon it, and then orally to allow time for making a change, and afterwards make any modification in the original order apparently on a mere ex parte application therefor, not even showing what modification was asked. *Wells* v. *Butler's Builders' Supply Co.,* 128 *Ga.* 37 (3), 39 (57 S. E. 55).

It was contended that the order had not been put upon the minutes, and was not binding. While it is the duty of the clerk to enter orders and judgments on the minutes, they are nevertheless binding from their rendition; otherwise the clerk and not the judge would make a ruling effective. If the clerk fails to perform his duty, he may be compelled to do so; but if a case has been heard and an adjudication has been made and a judgment has been duly filed by the presiding judge, it does not remain open as an unfinished or incomplete judgment, so as to be changed at the request of one party without proper application and notice to the other. Moreover, if the allowance of the amendment after the rendition of the judgment could be treated as affective, it went no further than to strike the names of the executors of George H. Camp as parties defendant. Even if this were done, it would not wholly relieve the case from being demurrable on the ground indicated. It would simply affect the particular demurrer based upon their being parties defendant.

4. In paragraph 5 it was alleged that "it was suggested" to Mrs. Camp "that she should by deed secure the said residuary bequest and devise of the said George H. Camp and her other property and the income thereof to herself for her life and equally to her children at her death." In the 6th paragraph it was alleged, that thereupon she and her four children agreed that she should and would make such deed, "and she then offered and promised to execute any such deed her four children agreed to;" that afterwards, from September 25, 1907, to October 1, 1907, she was ready to execute a deed prepared by one of the defendants and an attorney, creating a trust estate with certain powers in the trustee and the survivors and successors of them; that one of the defendants to the present action, the husband of the plaintiff, objected to the trust created and the powers conferred on the survivor and successors of the trustees in the proposed deed; and that Mrs. Camp

did not execute the deed nor then make any deed. While the first clause in the 6th paragraph alleges that "she and they [verbally, as stated by the amendment] agreed that she should and would make said deed," it is immediately followed by the statement that she promised to make and execute any such deed as her four children agreed to. The remainder of the paragraph recites an ineffectual effort to agree upon a deed, and that none was made, the objection to the deed which she proposed to make being raised by the husband of the plaintiff, her present attorney. The paragraph accordingly failed to set out any distinct agreement, and the recital of an effort which failed was not material. There was, accordingly, no error in striking such paragraph on demurrer. We need not go further and deal with what might be the effect of an agreement if one had been distinctly alleged. Nor do we think this paragraph served as a general reference to subdivision (2) of the following paragraph, that "for the reasons and considerations aforesaid," etc., the children made the written agreement in regard to not influencing their mother and in regard to papers made without their control, knowledge, and consent.

5. There was no error in sustaining a special demurrer to certain words contained in paragraph one of the petition, stating whether the children of George H. and Jane M. Camp had married or not, and the number of children, if any, which had been born to those who were married. Such allegations could not in any way explain or aid the issues sought to be raised by the petition.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*